1
2
3
4
5                                    IN THE UNITED STATES DISTRICT COURT

6                                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    JUAN DOMINGUEZ,                              No. C-09-03611 EDL

9            Plaintiff,                           **ORDER GRANTING IN PART AND
                                                  DENYING IN PART MOTION TO**
10     v.                                         **EXCLUDE; GRANTING IN PART AND
                                                  DENYING IN PART MOTION FOR**
11   EXCEL MANUFACTURING CO. INC.,                **SUMMARY JUDGMENT OR SUMMARY
                                                  ADJUDICATION**
12           Defendant.
                                          /
13

14   **I.      Introduction**

15           This is a personal injury action brought by Plaintiff Juan Dominguez and his wife Juana

16   Dominguez against machine manufacturer Excel Manufacturing Co. ("Excel") relating to injuries

17   sustained by Plaintiff during his use of a "horizontal baler" machine in the course of his

18   employment.  Defendant has filed a motion to preclude the testimony of Plaintiffs' only proposed

19   industry standards expert, Kenneth Smith, pursuant to Federal Rules of Evidence 401, 702, 703 and

20   <u>Daubert</u>.  Excel has also filed a motion for summary judgment or summary adjudication on the basis

21   that, if Mr. Smith's expert testimony is excluded, Plaintiffs cannot establish any of their three claims

22   for relief against Excel.  For the following reasons, Excel's motion to exclude is GRANTED IN

23   PART and DENIED IN PART, and the motion for summary judgment or summary adjudication is

24   GRANTED IN PART and DENIED IN PART.

25   **II.     Background**

26           On April 25, 2008, Mr. Dominguez was using a baler manufactured by Defendant in the

27   course of his employment for Pleasant Paper Recycling Company.  Compl. ¶ 14-15.  The baler in

28   question was purchased by Harry Luan, owner of Pleasant Paper Recycling, in 1999.  Mr.

     Dominguez was conducting adjustments to a load of aluminum cans inside the baler in order to

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  unblock the feed chamber.  Id. ¶ 15.  During the course of unblocking the feed chamber, Mr.

2  Dominguez's leg was caught in the bale cycle and crushed.  Id. ¶ 16. Mr. Dominguez spent over

3  three months in the hospital recovering and incurred significant medical costs associated with his

4  injuries.  Id. at ¶ 18.  Mr. Dominguez admittedly left the baler in "automatic" mode, as opposed to

5  "manual" mode, when he climbed into the baler to clear the jam, though he knew it was dangerous

6  to do so.  Flynn Decl. In Support of Motion to Bifurcate, Ex. E (Dominguez Depo.) at 70, 85.

7  Defendant contends that the baler in question satisfied all relevant guidelines and standards and was

8  delivered to the employer with all warning labels legible and intact.  Plaintiffs disagree.  The baler is

9  no longer in Pleasant Paper's possession, and the parties and their experts have been unable to

10  inspect the machine in connection with this litigation, because Mr. Luan shipped the baler to China

11  following the incident.

12         Plaintiffs filed their complaint against Excel for strict product liability, negligence, and loss

13  of consortium on August 7, 2009.  On May 28, 2010, Plaintiffs disclosed Kenneth Smith of

14  Engineering Systems, Inc. as their sole industry standards expert, and produced an initial two-and-a-

15  half page report by him containing four preliminary opinions.  See Flynn Decl. Ex. C.  On July 23,

16  2010, following the disclosure of Defendant's industry standards expert and accompanying report,

17  Plaintiffs produced a "supplemental" report by Mr. Smith.  See id. Ex. H.  For the supplemental

18  report, Mr. Smith reviewed additional documents and evidence but came to essentially the same four

19  conclusions as those drawn in his preliminary report.   Specifically, he concludes that: (1) Excel

20  knew that injuries such as Plaintiff's were reasonably foreseeable and therefore it had an obligation

21  to take reasonable actions to preclude such occurrences, including barriers, sensors, interlocks, light

22  barriers, and such devices that would discourage or prevent personnel access, and would interrupt

23  power to the machine should the barriers be passed; (2) based on the number of similar accidents in

24  OSHA records, the occurrence was frequent enough and the consequences severe enough that Excel

25  should have taken additional precautions; (3) design of the baler was in violation of Cal-OSHA §

26  4353 which requires barriers to prevent employee access to baler mechanisms and the material

27  processing areas; and (4) the absence of stop devices present near the in-feed area of the machine

28  was a defective shortfall of the machine, because such devices are within the state of the art to have

1   had installed at the construction of the machine and such devices are required on other equipment

2   operator entanglement is a reasonably expected occurrence.  Id.

3          In the "Discussion" section of his report, as opposed to the "Conclusions" section, Mr. Smith

4   also states that "Mr. Dominguez had to rely on warning, instructions and labels on the machine,

5   which were not legible or were absent."  Id. at 3.C.  However, he provides no background or

6   evidence for this statement.  Additionally, in attempting to refute Defendant's expert's conclusion

7   that signage on the machine was adequate, Mr. Smith states that "there is no basis to conclude

8   whether the missing signage was due to improper maintenance, due to the use of inadequate signage

9   materials by Excel, or a manufacturing defect where critical signage was not installed by Excel.  In

10  any case, Mr. Beyer's conclusion regarding the signage and on-product warnings seems unwarranted

11  and inappropriate."  Id. at 5.K.  For this statement, Mr. Smith relies on the deposition of a OSHA

12  inspector that a critical warning sign was not present as well as Pleasant Paper Company's

13  subsequent order of additional signage following the accident.   Mr. Smith's report is not signed

14  under penalty of perjury, but it was reviewed by another consultant/engineer at Engineering

15  Systems, Inc. Id.

16         Despite the fact that these are the only four "Conclusions" contained in his report, Plaintiff's

17  opposition to Excel's motions broadly claims that Mr. Smith will "opine about the relevant safety

18  standards, regulatory implementation of safety standard [sic], practical implementation of articulated

19  safety standards, i.e., 'guarding by location,' 'work area,' 'working level,' 'point of operation

20  guard,' 'minimum loading height' labeling and substantial factor causation."  Opp. at 11.

21  **III.     Excel's Objections to Plaintiffs' Evidence**

22         Excel objects to the Declaration of Julio Ramos and the exhibits attached thereto on multiple

23  bases.[1]

24         **1.      Exhibit A: U.S. Patent No. 7,493,854 (Jam Detection and Safety Device for**

25  **Jamming Machinery).**  Excel argues that this document is hearsay, lacks foundation, and is

26  _____

27         [1] Excel also notes that it was served with the declaration and exhibits two days late. Mr. Ramos
    filed a notice of error in electronic filing, explaining that he was unaware that the exhibits had not been
    properly efiled and he remedied the defect in filing as soon as he was aware. See Dkt. #65. Excel has
28  not shown any prejudice resulting from the e-filing error so this does not warrant exclusion of any
    evidence.

1    irrelevant because the patent was issued in 2009 and the baler in question was manufactured in 1999.

2    This evidence is irrelevant to the issues currently before the Court and the Court has not considered

3    it in connection with these motions.  Therefore, this objection is MOOT.

4          **2.        Exhibit B:  Pleasant Paper Invoices.**  Excel argues that these documents are

5    hearsay, lack foundation, and are irrelevant because they do not relate to the subject baler.  This

6    evidence is irrelevant to the issues currently before the Court and the Court has not considered it in

7    connection with these motions.  Therefore, this objection is MOOT.

8          **3.        Exhibit C:  Complaint Against Excel in Northern District of Illinois**.  Excel

9    argues that this document is hearsay, lacks foundation, and is irrelevant because it involves a

10   different baler than the one at issue here.  While this evidence could be relevant to Excel's notice

11   and a related failure to warn claim if the machine in question was sufficiently similar, the evidence is

12   irrelevant to the issues currently before the Court and the Court has not considered it in connection

13   with these motions.  Therefore, this objection is MOOT.

14         **4.        Exhibit D: Cal-OSHA Photographs**.  This exhibit consists of one "thumbnail" sheet

15   of 15 very small photographs, and three larger photographs of a baler.  Excel argues that these

16   documents are hearsay and lack foundation because there is no affidavit by a custodian of records or

17   anyone qualified to testify that the documents are what Plaintiffs purport them to be.  At oral

18   argument, the Court questioned  Excel about whether it has a legitimate basis to dispute that the

19   photographs are what Plaintiffs say they are, and Excel argued that it has no basis for knowing

20   where the photos came from because they were not produced for the deposition of Cal-OSHA's

21   representative or in response to the subpoena to Cal-OSHA.   Plaintiffs' counsel stated that he

22   obtained the photographs from Cal-OSHA when he personally went there and examined papers.  In

23   light of the parties' disagreement over the authenticity of the photographs, during oral argument the

24   Court Ordered a limited re-deposition of Cal-OSHA to authenticate the photos, to take place as soon

25   as possible.

26         Plaintiff subsequently filed a letter with the Court requesting that it be excused from

27   deposing a Cal-OSHA representative to authenticate the photographs based on documentation

28   indicating that at least three of the photographs were previously provided to counsel for Excel by

1  Cal-OSHA.  See Dkt. #70.  Excel has filed a responsive letter stating that it never saw the thumbnail

2  sheet prior to Mr. Smith's deposition, but did receive the three photos of the baler directly from Cal-

3  OSHA.  However, Excel argues that the cover letter from Cal-OSHA attaching the photographs did

4  not state who took them, where they were taken, or what they depict and they were not produced in

5  response to a subpoena and not verified during a previous Cal-OSHA deposition.  Therefore Excel

6  stands by its objections to all of the photographs.

7          Based on the parties' arguments, both at oral argument and in their subsequent letters, the

8  Court Orders Plaintiff to either conduct a further deposition of OSHA or obtain a written declaration

9  from an appropriate custodian of records authenticating and laying a foundation for the photographs.

10  When the photos are authenticated and their foundation established, the objection will be overruled.

11  For purposes of this Order, however, and in an abundance of caution, the Court has not considered

12  the photographs.

13          **5.      Exhibit E: Decal Order.**  Excel argues that this document is hearsay, lacks

14  foundation, and is irrelevant because the complaint does not contain a cause of action for failure to

15  warn.  This evidence is irrelevant to the issues currently before the Court and the Court has not

16  considered it in connection with these motions.  Therefore, this objection is OVERRULED.

17  Additionally, the Court notes that this evidence may be inadmissible as a subsequent remedial

18  measure under Rule 407.

19          **6.      Exhibits F, G, H:  Cal-OSHA Citations**.  Excel contends that these documents are

20  hearsay and lack foundation because there is no affidavit by a custodian of records or anyone

21  qualified to testify that the documents are what Plaintiffs purport them to be.  Excel also argues that

22  evidence of Cal-OSHA citations is inadmissible under California Labor Code § 6304.5, which

23  provides in pertinent part:

24              Neither the issuance of, or failure to issue, a citation by the division shall have
                any application to, nor be considered in, nor be admissible into, evidence in any

25              personal injury or wrongful death action, except as between an employee and his
                or her own employer. Sections 452 and 669 of the Evidence Code shall apply to

26              this division and to occupational safety and health standards adopted under this
                division in the same manner as any other statute, ordinance, or regulation. The

27              testimony of employees of the division shall not be admissible as expert opinion
                or with respect to the application of occupational safety and health standards.  It is

28              the intent of the Legislature that the amendments to this section enacted in the
                1999-2000 Regular Session shall not abrogate the holding in Brock v. State of

1    California (1978) 8l Cal.App.3d 752.

2    Generally, the Federal Rules of Evidence govern admissibility of documents in this Court, so

3    this California statute is not dispositive.  Still, the citations themselves issued pursuant to California

4    law, so it would seem anomolous to allow citations issued pursuant to a California statute to be used

5    as evidence in federal court when they would not be admissible in state court.  Here, the motions at

6    issue can be resolved without consideration of this evidence, so the Court has not considered it in

7    connection with these motions.  Therefore, this objection is MOOT.

8    The Court notes that the Ninth Circuit has held that OSHA directives can be considered for

9    purposes of establishing the standard of care required by the manufacturer in the design and

10   manufacture of its product, but did not speak to the admissibility of citations.  See Robertson v.

11   Burlington Northern R.R. Co., 32 F.3d 408, 410-11 (9th Cir. 1994) (OSHA standards may be

12   admitted in a FELA case as some evidence of the applicable standard of care, but violation of OSHA

13   is not negligence per se); see also Elsner v. Uveges, 34 Cal. 4th 915, 926 (2005) ("plaintiffs may use

14   Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation

15   or statute, whether the defendant is their employer or a third party"); Busby v. Tom's Sierra Co.,

16   2002 WL 31888923, *5 (2002) (evidence of issuance of a Cal-OSHA citation is not admissible, but

17   reference to violations of safety precautions is admissible); Mulvey v. Royal Truck Body, 2002 WL

18   31501309, *3 (2002) (Cal-OSHA safety orders admissible).   Based on this caselaw, going forward

19   in this case the underlying Cal-OSHA standards may be relevant to the standard of care to be applied

20   for the state law claims.

21   **7.      Exhibit J:  Plaintiff's Expert Report**. Excel argues that this report is hearsay and

22   there is no declaration or statement by the author attesting to its authenticity or truth.  This is true for

23   both Plaintiffs' and Excel's expert reports, and both parties are Ordered to provide reports in which

24   the experts attest to the truth of the matters asserted therein.  Excel's other challenges to Mr. Smith's

25   report are addressed in connection with the Court's analysis of Excel's motion to exclude Mr.

26   Smith's testimony.

27   **8.      Exhibits L and M:  Excerpts of Deposition of Mr. Smith**.  These exhibits appear to

28   be portions of the transcript of Mr. Smith's deposition, but no deposition cover sheet indicating the

1   name of the deponent and the action  or reporter certification were included in Plaintiff's original

2   submission.  The documents as they were originally filed were unauthenticated and could not be

3   considered.  See Orr v. Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002) ("A

4   deposition or an extract therefrom is authenticated in a motion for summary judgment when it

5   identifies the names of the deponent and the action and includes the reporter's certification that the

6   deposition is a true record of the testimony of the deponent.").  At oral argument, the Court allowed

7   Plaintiffs until October 29, 2010 to cure this deficiency and Plaintiff has cured the deficiency.  See

8   Supp. Ramos Decl. Ex. A.  The objection is therefore OVERRULED.

9   **IV.    Motion to Exclude Expert Testimony**

10          Excel seeks to exclude all of Mr. Smith's testimony on grounds that: (1) he lacks knowledge,

11   skill, expertise, training and education in the area of design of commercial horizontal recycling

12   balers; (2) he lacks sufficient facts and data upon which to base his opinions; and (3) he fails to

13   utilize accepted methodology to test his concepts for safer alternative designs.

14          **A.    Legal Standard**

15          Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Pursuant to Rule

16   702, a witness qualified as an expert in "scientific . . . knowledge" and may testify thereto if: "(1) the

17   testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles

18   and methods; and (3) the witness has applied the principles and methods to the facts of the case."

19   Fed. R. Evid. 702.  For expert testimony to be admissible, it must meet three requirements: (1)

20   evidence must be useful to the fact finder in understanding the evidence or in making factual

21   determinations necessary to decide the ultimate issues of fact; (2) evidence must be reliable or

22   trustworthy; and (3) the witness must be qualified to provide the fact finder with assistance.  4

23   Weinstein, Weinstein's Federal Evidence, § 702.02[3] (2d ed. 2005).  The proponents of expert

24   testimony have the burden of proving admissibility pursuant to Rule 702 by a preponderance of the

25   evidence.  Fed. R. Evid. 702, Advisory Committee Notes (2000 amendments).

26          The trial court acts as a "gatekeeper" to the admission of expert scientific testimony under

27   Rule 702.  Daubert, 509 U.S. at 579-580.  The court must conduct a preliminary assessment to

28   "ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable."

United States District Court
For the Northern District of California

7

1   Id. at 589.  This two-step assessment requires consideration of whether (1) the reasoning or

2   methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether

3   the reasoning or methodology properly can be applied to the facts in issue (the relevancy prong).  Id.

4   at 592-93; Kennedy v. Collagen Corp., 161 F.3d 1226, 1228 (9th Cir. 1998).  Excel's motion focuses

5   on the reliability prong of this test.

6       Reliable testimony must be grounded in the methods and procedures of science and signify

7   something beyond "subjective belief or unsupported speculation."  Daubert, 509 U.S. at 590.  In

8   Daubert, the Supreme Court outlined factors relevant to the reliability prong, including: (1) whether

9   the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the

10  known or potential rate of error; and (4) whether the theory or methodology employed is generally

11  accepted in the relevant scientific community.  Daubert, 509 U.S. at 593-94.  The Supreme Court

12  emphasized the "flexible" nature of this inquiry.  Id. at 594.  As later confirmed in Kumho Tire Co.

13  v. Carmichael, 526 U.S. 137 (1999): "Daubert's list of specific factors neither necessarily nor

14  exclusively applies to all experts or in every case. Rather the law grants a district court the same

15  broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate

16  reliability determination."  Id . at 141-42.  In addition to the Daubert factors, the Ninth Circuit has

17  noted that a "very significant fact to be considered is whether the experts are proposing to testify

18  about matters growing naturally and directly out of research they have conducted independent of the

19  litigation, or whether they have developed their opinions expressly for purposes for testifying."

20  Daubert II, 43 F.3d at 1317.  If the evidence is not based upon independent research, the court must

21  determine whether there exists any "other objective, verifiable evidence that the testimony is based

22  on 'scientifically valid principles."  Id. at 1317-18.  Generally, peer review meets this requirement,

23  yet it may also be met by:

24      precisely [explaining] how [the experts] went about reaching their conclusions
        and point[ing] to some objective source-a learned treatise, the policy statement of
25      a professional association, a published article in a reputable scientific journal or
        the like-to show that they have followed the scientific method, as it practiced by
26      (at least) a recognized minority of scientists in their field.

27  Id. at 1319.

28      Finally, even under Daubert, the Court must still weigh the balancing factors of Fed.R.Evid.

**United States District Court**
For the Northern District of California

403.  Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Daubert, 509 U.S. at 595.

    **B.**    **Analysis**

        **1.**    **Mr. Smith's Background and Experience**

        In support of its motion to exclude, Excel first challenges Mr. Smith's background qualifications to testify as to any aspect of the baler in question.  It argues that he is not a licensed engineer in California, does not have degrees or certifications in the area of "human factors," has no training or education regarding the design or operation of a commercial horizontal baler, has given no expert testimony nor been qualified as an expert on the topic of commercial horizontal balers, has never given any presentations or written articles concerning the subject matter of this case, and has never been qualified as an expert in California.  See Motion at 11; see also Flynn Decl. Ex. D (Smith Depo.) at 5, 31, 33-34, 37, 51-53, 103.

        Plaintiff does not dispute these contentions about Mr. Smith's background, but points out that Mr. Smith has "over 30 years of experience in designing mechanical systems, including refuse compaction systems similar to the type at issue in this case."  Opp. at 1.  Plaintiff argues that Mr. Smith is licensed as an engineer in Wisconsin and Illinois, has experience investigating industrial accidents and has testified in depositions and at trial involving such accidents.  He received a Bachelor of Science in Naval Architecture from the Naval Academy in 1973 and a Master of Science in Engineering (Naval Architecture and Marine Engineering) from the University of Michigan in 1974.  Flynn Decl. Ex. C.  According to Plaintiffs, Mr. Smith "has also testified regarding State of California regulatory interplay with Naval Industrial Rules and Regulations.  He has personally designed compaction type prototypes for naval application, including waste process studies to determine the processes and human factors involved in the use of such equipment."  Opp. at 1; see also Ramos Decl. Ex. M (Smith Depo.) at 174-176 (discussing his participation in ensuring Navy's compliance with Cal-OSHA regulations); Flynn Ex. H (Smith report) (citing his experience as Deputy Director of the U.S. Navy's Shipboard Environmental Engineering directorate where "devices similar to balers were acquired and tested in the process of developing similar equipment

designed specifically for shipboard applications" including a plastics waste compactor).

Based on the information provided by Plaintiff, it is somewhat unclear how relevant Mr. Smith's education and experience are to the topic at hand. From his resume, it appears that he has significant education and experience on various marine engineering topics, but it is not entirely clear to what extent this expertise translates to other machinery such as commercial balers and their associated safety standards. Further, since Mr. Smith is not a California engineer and has never served as an expert in California, his qualifications to opine about Cal-OSHA standards are not obvious, though he states that he has experience with these standards. On the other hand, Mr. Smith is an engineer licensed in two states and has some relevant education and experience relating to industrial equipment accidents including wood chippers, conveyors and process equipment that involved personal injury and entrapment. See Flynn Decl. Ex. H (Smith Report). Accordingly, the Court will not disqualify Mr. Smith from giving any opinion based solely on the fact that his education and experience is not focused specifically on commercial horizontal balers such as the one at issue in this case, though this may impact the weight ultimately given to his opinions.

### 2.    Facts and Data Relied on By Mr. Smith

Excel also argues that Mr. Smith's testimony is unreliable because he relied on limited information and evidence in forming his opinions. Specifically, Mr. Smith did not personally inspect the baler, did not know what year it was manufactured at the time of his deposition, and did not know its condition at the time it left the manufacturer. Further, Mr. Smith has apparently not spoken to Plaintiffs, the employer, Cal-OSHA investigators, or others in the industry in order to inform his opinions. Plaintiffs do not refute any of these points. However, Mr. Smith's report states that he reviewed deposition transcripts for Mr. Dominguez and his employer, OSHA citations, ANSI and OSHA provisions, photographs of the baler, and other documents relating to balers. See Flynn Ex. H.

In Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1222 (9th Cir. 1995), the Ninth Circuit affirmed summary judgment in favor of a defendant where neither party's expert had access to an allegedly defective circuit breaker and therefore could not express a reliable opinion based on specific facts. The court found that "[a] jury should not be asked to evaluate the credibility of

10

experts concerning the defectiveness of a circuit breaker and its container when it left the hands of [the manufacturer], which the experts have neither seen nor can see, and which was manufactured more than two decades ago."  Id.  Excel relies on this case to argue that all of Mr. Smith's testimony should similarly be rejected.  However, Triton can be partially distinguished on the basis that it appears to have been primarily a manufacturing defect case, though design defect was also alleged. In a case such as Triton, the experts' access to the allegedly defectively manufactured circuit breaker would be essential to forming an opinion on the existence of a manufacturing defect, in that the issue turns on whether that particular breaker was defective at the time it left the manufacturer's possession.

In contrast, in a primarily defective design case such as this one, access to the particular item at issue is less important if the expert has knowledge about and/or access to those items and their safety features more generally.  Mr. Smith has examined other documents and evidence in forming his conclusions, and his opinions will not be entirely disregarded as unreliable on the basis of his investigation, though this may also impact the weight ultimately given to his opinions.

### 3.    Opinions Regarding Alternative Design Proposals

Excel contends that Mr. Smith's opinions regarding alternative safety design proposals should be rejected for several reasons.   First, it argues that Mr. Smith has never seen a pull cable or safety bar that activates an emergency stop or light curtain in a commercial horizontal baler, has not analyzed how much it would cost to install such devices (though he gives an estimate of $25-50 for a simple device or a couple hundred dollars for a light curtain), and has not evaluated what effect the devices might have had on the operation of the baler in question.  Further, Mr. Smith has not developed designs or tested the feasibility of any such alternative design proposals on a commercial horizontal baler.  See Flynn Decl. Ex. D (Smith Depo.) at 143-47.  However, throughout the deposition testimony relied on by Excel, Mr. Smith continuously states that the reason his answer to these questions is "no" is because the questions contains multiple adjectives that make them overly specific, and he has experience in safety features of related technologies.  The following exchange is one example:

> Q:  Are you aware of any commercial recycling horizontal balers that have a pull cable in the compaction area?

A:  I think I just said I hadn't seen them on a baler.  I have seen them on other equipment with a similar hazard, but not a baler.
...

Q:  Have you yourself ever designed any type of E-stop inside the compaction chamber of a horizontal commercial baler?
A:  You keep adding enough adjectives and the answer will be no.  An E-stop in the accessible part of something, again, I participated in a design review where one of the fallouts was you need something like that here, let's go back and put it in.
Q:  Okay. But not inside a baler, the dimensions or that operated the same way that the baler involved in this --
A:  I said you add enough adjectives and we will get to a "no."  But the same principles and the same kind of machines, yes.

Therefore, Excel's effort to entirely downplay Mr. Smith's knowledge or experience relating to safety features for machinery similar to the baler in question should be rejected, though it is true that he does not have practical experience with the baler in question and this is significant for the reasons discussed below.

Excel relies on Kinser v. Gehl Co., 184 F.3d 1259, 1271 (10th Cir. 1999), abrogated on other grounds by Weisgram v. Marley Co., 528 U.S. 440 (2000), for the position that testing of alternative design proposals is critical to the reliability of an expert's testimony on the subject, and since Mr. Smith has not personally tested his proposed design changes they are unreliable.  In Kinser, the Tenth Circuit concluded that two experts' testimony regarding proposed design solutions for a baler should have been excluded under a Daubert analysis, where both acknowledged that "there is a well-recognized methodology which engineers in the field of product design must follow before recommending a design for a particular piece of equipment," but admitted that their proposed changes were mere concepts and they had neither developed designs or tested their feasability.  Id. at 1271-72.  The Tenth Circuit noted that hands-on testing is not an "absolute prerequisite" to admissibility, and an expert might establish reliability through review of scientific data generated by others, but in the case before it no evidence of a review of scientific data of others had been provided.  However, the court found the lower court's error in admitting the evidence to be harmless, because some of the expert's recommendations had been demonstrated feasible and were in use on similar baler machinery prior to production of the baler in question, and this evidence was relevant to the underlying state law design defect claim.  Id

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1     Similarly, in <u>Wagner v. Hesston Corp</u>., 450 F.3d 756 (8th Cir. 2006), the Eighth Circuit

2  affirmed a lower court's decision to exclude expert testimony regarding proposed safety features of a

3  baler as unreliable where the proposals were subjected to minimal testing, there was slim evidence

4  of peer review, there was no evidence showing general acceptance in the industry for the proposed

5  safety guards on balers such as the one at issue, all of the proposals were developed in connection

6  with litigation, and a baler with the proposed safety features was not shown to work as well as

7  without. <u>Id</u>. at 758-59.  The court rejected the plaintiff's argument that he need not establish that a

8  safer alternative design existed to avoid summary judgment, noting that he chose to rely on a design

9  defect theory that required this showing and therefore without the expert testimony summary

10  judgment was appropriate.

11     Plaintiff does not address any of these arguments or caselaw, and has not explained what

12  evidence or documents Mr. Smith relied on in forming his opinions about his alternative design

13  proposals, whether he has personally tested similar concepts on similar machines, whether his

14  theories have been subject to peer review, whether his theories are generally accepted in the relevant

15  scientific community, and whether or not they were developed in connection with this litigation.  His

16  deposition indicates that he is knowledgeable about other technologies similar to balers, but not

17  specifically balers.  His report does not specify what scientific data he relied on in forming his

18  conclusions on this topic, or what other technology uses similar safety features and how these other

19  products are similar or different from the baler in question.  <u>See</u> Flynn Decl. Ex. H.  At oral

20  argument, Plaintiff attempted to argue that Cal-OSHA standards are themselves "alternative design

21  theories," but the Court rejects this argument because Plaintiff provided no authority for it.  Plaintiff

22  also argued that the baler cases discussed above should not be considered because they are out-of-

23  circuit cases, but although they are not binding their reasoning is persuasive, especially in light of

24  the absence of any contrary Ninth Circuit authority.  Without more evidence, and under the

25  reasoning of <u>Kinser</u> and <u>Wagner</u>, Mr. Smith's alternative design proposals are not sufficiently

26  reliable to be admitted as part of his expert testimony.   Therefore, Excel's motion to exclude his

27  opinions relating to alternative design proposals is GRANTED.

28

**United States District Court**
For the Northern District of California

4.      **Opinion Regarding Compliance With Cal-OSHA Standard**

Excel also argues that Mr. Smith's opinion that the baler's design (including features that allegedly made it easy to climb on top of the machine) was in violation of Cal-OSHA § 4353 should be rejected because the regulation applies to the operation of balers and therefore relates to employers, not manufacturers. It argues that the regulation governing design is instead section 4352, which requires employers to ensure that their balers comply with ANSI standards. See Flynn Decl. Ex. I (Cal-OSHA regulations). Essentially, it appears that Excel challenges the *correctness* of Mr. Smith's opinion about the Cal-OSHA standards, not really his qualifications for rendering the opinion. Further, the Court disagrees with Excel's position that the Cal-OSHA regulations are *only* relevant to employers, because of the cases cited above holding that Cal-OSHA provisions can be relevant to the standard of care of a third-party. At oral argument, the Court also raised with the parties the point that Mr. Smith's opinion on this topic is not so much a legal interpretation of a statute, as to which expert testimony would not usually be helpful, but addresses more of a scientific question about whether Excel met the standard of care. As discussed above, there is some evidence that Mr. Smith has experience evaluating and ensuring compliance with Cal-OSHA. See Ramos Decl. (Smith Depo.) at 174-76. Therefore, this opinion is not excluded and Excel's motion on this point is DENIED.

5.      **Other Opinions Not Contained In Mr. Smith's Report**

In addition to the four opinions relating to safety features and Cal-OSHA compliance disclosed in Mr. Smith's report, Plaintiff argues that Mr. Smith is qualified to give additional opinions on "relevant safety standards, regulatory implementation of safety standard [sic], practical implementation of articulated safety standards, i.e., 'guarding by location,' 'work area,' 'working level,' 'point of operation guard,' 'minimum loading height' labeling and substantial factor causation," as well as the adequacy of the warning labels on the machine in question. Plaintiff's opposition summarizes Mr. Smith's deposition testimony on some of these topics and appears to attempt to justify their relevance, but does not explain Mr. Smith's qualifications for opining on these topics which appear to relate almost entirely to compliance with ANSI standards. At oral argument, Plaintiff acknowledged that Mr. Smith had not really been questioned on his experience

14

**United States District Court**
For the Northern District of California

1   with ANSI and was more focused on his Cal-OSHA qualifications.  However, without more

2   evidence of Mr. Smith's ANSI-related qualifications or experience, or explanation of what his

3   opinions on these topics will be (because they are not contained in his report and Plaintiff's

4   opposition contains only portions of his deposition testimony relating to these topics), his opinions

5   are unreliable and the motion is GRANTED with respect to these ANSI-related opinions.

6          With respect to a "failure to warn" theory, at oral argument Plaintiff argued that Mr. Smith's

7   opinion on this topic should be allowed because photographs of the baler taken by Cal-OSHA

8   indicate that the warnings on the machine were illegible, and Mr. Smith stated in his report that the

9   labels were not legible or were absent.  Mr. Smith did not mention a failure to warn in the

10  "Conclusions" section of his report, but his report briefly references a failure to warn in the

11  "Discussion" section by stating that:  "Mr. Dominguez had to rely on warning, instructions and

12  labels on the machine, which were not legible or were absent."  Report at 3.C.  His report provides

13  no background or evidence for this statement, and it is not contained in the "Conclusions" section of

14  his report.  Also in his report, in attempting to refute Defendant's expert's conclusion that signage on

15  the machine was adequate, Mr. Smith states that "there is no basis to conclude whether the missing

16  signage was due to improper maintenance, due to the use of inadequate signage materials by Excel,

17  or a manufacturing defect where critical signage was not installed by Excel.  In any case, Mr.

18  Beyer's conclusion regarding the signage and on-product warnings seems unwarranted and

19  inappropriate."  Report at 5.K.  For this statement Mr. Smith apparently relied on the deposition of a

20  Cal-OSHA inspector that a critical warning sign was not present, Pleasant Paper Company's

21  subsequent order of additional signage following the accident, and perhaps some photographs of the

22  baler in question.

23         Excel counters that Mr. Smith's failure to warn theory should be rejected because Plaintiff's

24  complaint does not contain a failure to warn claim and the there is no basis for Mr. Smith's failure to

25  warn opinion because, even if the Court were to consider the photographs of the baler apparently

26  taken by Cal-OSHA, they were taken when the machine was nine years old and it is not the

27  manufacturer's duty to monitor all of its machines to ensure that labels are being properly

28  maintained by the user.  Given that Defendant's expert report was prepared before Mr. Smith'

supplemental report and addressed the adequacy of the signage, Mr. Smith's opinions on failure to warn should not be excluded as not adequately or timely disclosed. Excel obviously had notice that this might be a theory in the case and had its expert opine on this topic. However, Excel's point that there is no evidence of what signage was on the baler at the time it was sold, because even if the Court were to consider the only direct evidence purportedly relating to the condition of the baler (the Cal-OSHA photographs) it merely shows the machine as it looked nine years after it left Excel's control, is persuasive.

Further, neither side has really focused on a failure to warn theory, likely because neither of their experts has actually seen the baler in question to determine the adequacy of the signage so their opinions are not based on scientific examination. Instead, Excel's expert's opinion that the signage was adequate is based on examination of an "exemplar" baler, but there is no indication of whether that baler is of the same model, built at the same time for the same region, and other pertinent factors. Mr. Smith relies on the testimony of a third party and the photographs apparently taken by OSHA.

In the failure to warn context, these facts can be analogized to <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216 (9th Cir. 1995), a case discussed above. In <u>Triton</u>, neither expert had access to an allegedly defective circuit breaker, the only evidence they had to form their opinions was a photograph of the breaker taken by the fire department and testing done on a different breaker in the same panel, and there was no evidence as to whether the breaker had been damaged in the more than twenty year period since it left the manufacturer's plant. <u>Id</u>. at 1219-20. Thus, the Ninth Circuit affirmed summary judgment for the defendant, finding that Plaintiff could not meet its burden of proof that the circuit breaker was defective because its expert opinion, and the inferences to be drawn from it, were "not of sufficient quantum or quality to create genuine issues of material fact." Similarly here, without the baler at issue or any evidence of its condition at the time it left Excel's control, there is no basis on which either expert can formulate a reliable opinion about Excel's failure to warn. Indeed, Mr. Smith acknowledged as much in his report when he stated that "there is no basis to conclude whether the missing signage was due to improper maintenance, due to the use of inadequate signage materials by Excel, or a manufacturing defect where critical signage was not

United States District Court
For the Northern District of California

1    installed by Excel."  Accordingly, Plaintiff has not adequately established the reliability of Mr.

2    Smith's opinions relating to Excel's alleged failure to warn and Excel's motion is GRANTED as to

3    this opinion.

4    **V.      Excel's Motion for Summary Judgment or Summary Adjudication**

5          In connection with its motion to exclude the testimony of Plaintiff's proposed industry

6    standards expert, Excel moves for summary judgment or summary adjudication of Plaintiffs' claims

7    on the basis that Plaintiff cannot establish a design defect without Mr. Smith's testimony.  Excel also

8    moves for summary adjudication of Plaintiff's punitive damages claim.

9          **A.      Legal Standard**

10          Summary judgment shall be granted if "the pleadings, discovery and  disclosure materials on

11   file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

12   is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Material facts

13   are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby,

14   Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient

15   evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view

16   the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable

17   inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

18   U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter,

19   but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047,

20   1054 (9th Cir. 1999).  The evidence presented by the parties must be admissible.  Fed. R. Civ. Proc.

21   56(e).

22          A party seeking summary judgment bears the initial burden of informing the court of the

23   basis for its motion, and of identifying those portions of the pleadings and discovery responses that

24   demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,

25   323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively

26   demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue

27   where the nonmoving party will bear the burden of proof at trial, the moving party can prevail

28   merely by pointing out to the district court that there is an absence of evidence to support the

1   nonmoving party's case.  Id.

2       If the moving party meets its initial burden, the opposing party "may not rely merely on

3   allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine

4   issue for trial."  See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  "Conclusory, speculative

5   testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat

6   summary judgment."  Soremekun v. Thrifty Payless, Inc. 509 F.3d 978, 984 (9th Cir. 2007); see also

7   Nelson v. Pima Community College, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and

8   speculation do not create a factual dispute for purposes of summary judgment").  If the nonmoving

9   party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as

10  a matter of law."  Celotex, 477 U.S. at 323.

11      **B.**     **Analysis**

12      Excel argues that the undisputed evidence shows that the baler in question was not

13  defectively designed because it complied with industry standards and the state of the art at the time

14  of manufacture, and it was instead Plaintiff's negligence that caused the accident.

15              **1.**     **Strict Product Liability**

16      The California Supreme Court has stated:

18      [A] product may be found defective in design, so as to subject a manufacturer to strict
        liability for resulting injuries, under either of two alternative tests. First, a product
19      may be found defective in design if the plaintiff establishes that the product failed to
        perform as safely as an ordinary consumer would expect when used in an intended or
        reasonably foreseeable manner.  Second, a product may alternatively be found
20      defective in design if the plaintiff demonstrates that the product's design proximately
        caused his injury and the defendant fails to establish, in light of the relevant factors,
21      that, on balance, the benefits of the challenged design outweigh the risk of danger
        inherent in such design.

23  Barker, 20 Cal.3d at 432.[2]

24      If the product's design embodies "excessive preventable danger," or, in other words, the

25  "risk of danger inherent in the challenged design outweighs the benefits," the product may be

26  defective under the risk-benefit test.  Hansen v. Sunnyside Prods., Inc., 55 Cal.App.4th 1497, 1512

27  (1997).  "'Excessive' preventable danger logically includes consideration of [] warnings to

28

    [2] Neither party argues that the consumer expectations test applies.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   determine the likelihood that harm will occur."  Id.  The Barker Court stated:

2       Because most of the evidentiary matters which may be relevant to the determination
        of the adequacy of a product's design under the "risk-benefit" standard - e.g., the
3       feasibility and cost of alternative designs - are similar to issues typically presented in
        a negligent design case and involve technical matters peculiarly within the knowledge
4       of the manufacturer, we conclude that once the plaintiff makes a prima facie showing
        that the injury was proximately caused by the product's design, the burden should
5       appropriately shift to the defendant to prove, in light of the relevant factors, that the
        product is not defective.

6

7   Barker, 20 Cal.3d at 431.  Although there is some overlap between design defect and negligent

8   design, the claims are not the same.  See Barker, 20 Cal.3d at 434 ("It is true, of course, that in many

9   cases proof that a product is defective in design may also demonstrate that the manufacturer was

10  negligent in choosing such a design. As we have indicated, however, in a strict liability case, as

11  contrasted with a negligent design action, the jury's focus is properly directed to the condition of the

12  product itself, and not to the reasonableness of the manufacturer's conduct.").

13      Without directly addressing the risk-benefit test or any evidence relating to either party's

14  position, Excel again relies on Triton Energy Corp., 68 F.3d at 1221.  Excel points out that in Triton

15  the court refused to consider expert testimony about an allegedly defective circuit breaker because

16  neither side's expert had access to the breaker in question and therefore could not express a reliable

17  opinion based on scientific facts.  Without this testimony, the court found that the plaintiff would not

18  be able to meet its initial burden at trial and granted summary judgment.  Id.

19      Here, for purposes of this motion and viewing the facts in the light most favorable to

20  Plaintiffs, the Court will assume that Plaintiffs have raised a triable issue of fact as to a prima facie

21  showing that Mr. Dominguez's injuries were proximately caused by the baler's design, as opposed

22  to his own negligence or the fault of his employer.  Thus, the burden shifts to Excel show that, on

23  balance, the benefits of its challenged design outweigh the risk of danger inherent in such design.

24  Excel has attached a report of its expert Roman Beyer, who opines that the product was not

25  defectively designed.  See Flynn Decl. Ex. E.  Plaintiff has not challenged this evidence.  In contrast,

26  as discussed above, Plaintiffs have not adequately established any basis for allowing Mr. Smith to

27  testify regarding alternative design or failure to warn that might raise a triable issue of fact as to

28  strict product liability.  Summary adjudication of the design defect claim is GRANTED.

19

United States District Court
For the Northern District of California

### 2.   Negligence

The focus of a claim for negligence in a products liability case is whether the manufacturer acted with reasonable care.  To prevail on a negligence claim, Plaintiffs must show that Excel owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of the injuries.  See Merrill v. Navegar, Inc., 26 Cal.4th 465, 477 (2001).  The California Supreme Court has stated:

> The duty of a manufacturer with respect to the design of products placed on the market is defined in the Restatement Second of Torts, section 398: 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' Thus, the manufacturer must use reasonable care "to so design his product as to make it not accident-proof, but safe for the use for which it was (sic) intended." (Varas v. Barco Mfg. Co. (1962) 205 Cal.App.2d 246, 258, 22 Cal.Rptr. 737, 744, quoting from 76 A.L.R.2d 91, 94.) What is 'reasonable care,' of course, varies with the facts of each case, but it involves a balancing of the likelihood of harm to be expected from a machine with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm.

Pike v. Frank G. Hough Co., 2 Cal.3d 465, 470 (1970).

Excel argues that Plaintiffs' negligence claim fails because Mr. Smith's testimony regarding alternative designs for safety features should be excluded.  However, Plaintiffs' opposition correctly points out that Excel's motion does not address the state of the art at the time the baler was manufactured, or any other testimony or documentary evidence, including Mr. Smith's testimony about Excel's alleged non-compliance with Cal-OSHA standards.  Plaintiffs argue that OSHA directives can be considered for purposes of establishing the standard of care required by Excel in the design and manufacture of the baler. See Robertson v. Burlington Northern R.R. Co., 32 F.3d 408, 410-11 (9th Cir. 1994) (OSHA standards may be admitted in a FELA case as some evidence of the applicable standard of care, but violation of OSHA is not negligence per se); Elsner v. Uveges, 34 Cal. 4th 915, 926 (2005) ("plaintiffs may use Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation or statute, whether the defendant is their employer or a third party"); Busby v. Tom's Sierra Co., 2002 WL 31888923, *5 (2002) (evidence of issuance of a Cal-OSHA citation is not admissible, but reference to violations of safety precautions is admissible); Mulvey v. Royal Truck Body, 2002 WL 31501309, *3 (2002) (no error to admit Cal-

1   OSHA safety orders, as opposed to citations).

2       Excel's reply does not refute these citations, or otherwise explain why Mr. Smith's testimony

3   regarding Excel's alleged failure to comply with applicable regulations is not some evidence that,

4   coupled with other evidence, could show that it fell below the standard of care and that this cause

5   Plaintiff's injuries.   Therefore summary adjudication of the negligence claim is DENIED.

6                       **3.      Loss of Consortium**

7       Excel correctly contends that, if the strict product liability and negligence claims fail, so does

8   the loss of consortium claim.  See Blain v. Doctor's Co., 222 Cal. App. 3d 1048, 1067 (1990).

9   However, because summary adjudication of the negligence claims is not warranted, this claim also

10  survives.

11                      **4.      Punitive Damages**

12      Excel challenges Plaintiffs' claim for punitive damages on the basis that no facts as alleged

13  in the complaint support an award of punitive damages.  "Punitive damages may be awarded in a

14  product liability action if it is shown that the defendant placed a product on the market in conscious

15  disregard of the safety of consumers and others." Ehrhardt v. Brunswick, Inc., 186 Cal.App.3d 734,

16  741 -742 (1986).  "[T]he plaintiff must establish that the defendant was aware of the probable

17  dangerous consequences of its conduct and that it wilfully and deliberately failed to avoid those

18  consequences." Id.  Plaintiffs did not address this argument in their opposition or at oral argument,

19  and have put forward no evidence meeting this standard or otherwise attempted to justify their claim

20  for punitive damages.   Therefore this portion of the motion is GRANTED.

21      **IT IS SO ORDERED.**

22  Dated:  November 8, 2010

23                                              _Elizabeth D. Laporte_
24                                              ELIZABETH D. LAPORTE
25                                              United States Magistrate Judge

26

27

28

21